No. 26-4014

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

_____

**PHIL LYMAN,**

*Plaintiff-Appellant*

v.

**DEIDRE HENDERSON, in her official capacity as
Lt. Governor of the State of Utah,**

*Defendant-Appellee*

_____

**APPELLANT'S OPENING BRIEF**

_____

Appeal from the United States District Court for the District of Utah
Honorable David Nuffer, District Judge
Case No. 4:25-CV-00069-DN-PK

_____

Kaylan Phillips
PUBLIC INTEREST LEGAL FOUNDATION
107 S. West Street, Ste. 700
Alexandria, VA 22314
(703) 745-5870
kphillips@publicinterestlegal.org

***ORAL ARGUMENT REQUESTED***

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................ iii

STATEMENT OF PRIOR OR RELATED APPEALS............................................v

JURISDICTIONAL STATEMENT ...............................................................1

STATEMENT OF THE ISSUES....................................................................1

STATEMENT OF THE CASE........................................................................2

SUMMARY OF ARGUMENT .....................................................................4

STANDARD OF REVIEW ...........................................................................5

ARGUMENT .................................................................................................6

    I.    Candidates Have Standing Under the NVRA ............................................6

    II.    The NVRA Requires Transparency .........................................................8

    III.    Mr. Lyman Plausibly Alleges Additional Adverse Consequences Caused by the Denial of Public Records............................................................10

        A. Tenth Circuit Precedent Does Not Foreclose Mr. Lyman's Downstream Consequences .........................................................13

        B. Other Courts Found Standing with Identical Pleadings.................17

        C. Other Circuit Precedents Do Not Foreclose Mr. Lyman's Downstream Consequences .........................................................18

    IV.    Mr. Lyman Is Injured from the Denial of Public Records .......................20

CONCLUSION.............................................................................................26

STATEMENT IN SUPPORT OF ORAL ARGUMENT ....................................27

i

CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a).......................28

CERTIFICATE OF DIGITAL SUBMISSION .......................................................29

CERTIFICATE OF SERVICE .................................................................................30

INDEX OF ATTACHMENTS ..................................................................................31

Attachment 1: Memorandum Decision and Order (Jan. 15, 2026) ....Attach. 1

Attachment 2: Judgment of the District Court (Jan. 15, 2026)...........Attach. 2

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                          <u>Page(s)</u>

*Am. Wild Horse Campaign v. Burgum*,
    768 F. Supp. 3d 1291 (D. Colo. 2025) ........................................................ 5

*Bost v. Ill. State Bd. of Elections*,
    146 S. Ct. 513 (2026)................................................ 4, 6-7, 11-13, 20

*Calderón v. City & Cnty. of Denver*,
    855 F. App'x 438 (10th Cir. 2021)................................................. 5

*Campaign Legal Ctr. v. Scott*,
    49 F.4th 931(5th Cir. 2022) .................................................. 18-19

*FEC v. Akins*,
    524 U.S. 11 (1998)................................................ 4, 13-14, 22-25

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982)................................................ 22-23

*Initiative & Reform Inst. v. Walker*,
    450 F.3d 1082 (10th Cir. 2006) ................................................. 5

*Jacobs v. Salt Lake City Sch. Dist.*,
    154 F.4th 790 (10th Cir. 2025) ................................................. 5, 10

*Judicial Watch, Inc. v. Griswold*,
    2022 U.S. Dist. LEXIS 153290 (D. Colo. Aug. 25, 2022)..................... 12, 25

*Judicial Watch, Inc. v. King*,
    993 F. Supp. 2d 919 (S.D. Ind. 2012)........................................ 25

*Laufer v. Looper*,
    22 F.4th 871 (10th Cir. 2022) ........................................... 4, 13-16

*Lujan v. Defs. Of Wildlife*,
    504 U.S. 555 (1992).............................................................. 10

iii

*Project Vote/Voting for Am., Inc. v. Long*,
752 F. Supp. 2d 697 (E.D. Va. 2010) ........................................................24

*Pub. Citizen v. U.S. Dep't of Justice*,
491 U.S. 440 (1989) ........................................... 4, 11, 13-14, 21-24

*Pub. Int. Legal Found., Inc. v. Bellows*,
92 F.4th 36 (1st Cir. 2024) ........................................................ 9, 15

*Pub. Int. Legal Found. v. Bennett*,
No. H-18-0981, 2019 U.S. Dist. LEXIS 38686
(S.D. Tex., Mar. 11, 2019) ........................................................ 24-25

*Pub. Int. Legal Found. v. Benson*,
136 F.4th 613 (6th Cir. 2025) ..................................................... 20

*Pub. Int. Legal Found., Inc. v. Fontes*,
No. CV-25-02722-PHX-MTL, 2026 U.S. Dist. LEXIS 3422 (D. Ariz. Jan. 5,
2026) ........................................................................ 17-18

*Pub. Int. Legal Found. v. Sec'y of Pa.*,
136 F.4th 456 (3d Cir. 2025) ...................................................... 20

*Pub. Int. Legal Found. v. Simon*,
774 F. Supp. 3d 1037 (D. Minn. 2025) ........................................... 24

*Pub. Int. Legal Found. v. Wolfe*,
No. 24-cv-285-jdp, 2024 U.S. Dist. LEXIS 216250 (W.D. Wis. Nov. 26,
2024) .......................................................................... 24

*Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*,
993 F.3d 802 (10th Cir. 2021) ...................................................... 5

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........................................... 14, 18-20, 23, 25-26

*Troutt v. Jones*,
415 F. App'x 935 (10th Cir. 2011) ............................................... 10

iv

*United States v. McDowell*,
   No. 3:19-cr-14-RGJ, 2023 U.S. Dist. LEXIS 161185 (W.D. Ky. Sep. 11,
   2023) ............................................................................................................... 19

*Voter Reference Found., LLC v. Galvin*,
   No. 24-cv-12592-DJC, 2026 U.S. Dist. LEXIS 64416 (D. Mass. Mar. 26,
   2026) ......................................................................................... 23-24

*Voter Reference Found., LLC v. Torrez*,
   160 F.4th 1068 (10th Cir. 2025) ........................................... 2-3, 8-9, 11-12

*Winzler v. Toyota Motor Sales U.S.A., Inc.*,
   681 F.3d 1208 (10th Cir. 2012)) ...................................................................... 8

*Zivotofsky v. Sec'y of State*,
   444 F.3d 614 (D.C. Cir. 2006) ..................................................................... 21

<u>Statutes and Regulations</u>

2 U.S.C. § 7 ................................................................................................................7

3 U.S.C. § 1 ................................................................................................................7

52 U.S.C. § 20507(i)(1) .................................................................. 2, 8-9, 12, 14, 23

Utah Code Ann. § 20A-2-104(2)(a) (LexisNexis 2025) .................................. 6-7, 15

Utah Code Ann. § 20A-2-104(4)(d)(i)-(ii) (LexisNexis 2025) ...............................15

## **STATEMENT OF PRIOR OR RELATED APPEALS**

This is the first appeal in this case and there are no related appeals.

v

## JURISDICTIONAL STATEMENT

This is a case about denial of public records under federal law. The district court had subject matter jurisdiction under 28 U.S.C. § 1331. The district court granted the Lt. Governor's motion to dismiss and entered judgment on January 15, 2026. App.113-14.[1] Mr. Lyman timely appealed on February 12, 2026. App.115-16. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

(I)     The district court erred in finding that Mr. Lyman, a candidate for public office and former elected official, lacked Article III standing to redress the denial of public records under the National Voter Registration Act ("NVRA").

(II)    The district court erred in finding that Mr. Lyman failed to plausibly allege sufficient downstream consequences arising from the denial of public records.

(III)   The district court erred in finding that Article III standing for denial of public records requires a showing beyond the denial of records Congress deemed to be public.

---

[1] References to the Appendix include the specific page number(s) of the Appendix.

1

**<u>STATEMENT OF THE CASE</u>**

Congress decided that "all records" concerning voter list maintenance are public. 52 U.S.C. § 20507(i)(1). Appellant Phil Lyman, a candidate for public office, Utah voter, and former elected official, sought public records. Utah refused to provide them. App.90-91. The district court held that defendant's denial of public records did no harm to Mr. Lyman. App.87-112.

Utah is refusing to comply with federal law making the requested election records public. Instead, the defendant only allows a fraction of the public records to be seen by the public. App.10. The rest is concealed. In the State's largest county, Salt Lake County, nearly one-third of the public records are withheld from the public. App.17.

Concealing these records violates federal law.

In 2024, Mr. Lyman requested access to Utah's voter roll. App.14. Mr. Lyman sought these records to further express objectives in the National Voter Registration Act ("NVRA")—namely, evaluate whether Utah is maintaining accurate and current voter rolls in compliance with federal and state law, to assess enforcement of voter eligibility requirements, and to propose and promote best practices for voter list maintenance. App.18. As this Court recently found, "critical scrutiny and public audits of voter data were envisioned by Congress in passing the

2

NVRA." *Voter Reference Found., LLC v. Torrez*, 160 F.4th 1068, 1082 (10th Cir. 2025).

The defendant provided no documents to Mr. Lyman. App.14-15. Mr. Lyman followed up. App.14. Finally, the defendant explicitly denied Mr. Lyman's request, directing him only to an incomplete version of the voter roll. App.14-15. The defendant refused to provide access to "all records" in Mr. Lyman's request, even though they were within the scope of the NVRA disclosure obligations.

Pursuant to the NVRA, Mr. Lyman provided written notice of the violation. App.15. Mr. Lyman afforded the defendant an opportunity to cure. App.15. The defendant neither responded nor cured the violation. App.15.

Mr. Lyman filed this action in the United States District Court for the District of Utah, seeking declaratory and injunctive relief to enforce the NVRA's public disclosure provision. App.8-22. The defendant moved to dismiss, arguing that Mr. Lyman lacked Article III standing. App.23-36.

The district court dismissed the case for lack of standing. App.87-112. The district court held that the denial of records alone was insufficient to establish injury in fact and that Mr. Lyman failed to allege adequate downstream consequences. Final judgment was entered on January 15, 2026. App.113-14. Mr. Lyman timely appealed. App.115-16.

3

## SUMMARY OF ARGUMENT

Candidates for public office have standing to request list maintenance records under the NVRA in the same way the Supreme Court ruled candidates have standing in *Bost v. Ill. State Bd. of Elections*, 146 S. Ct. 513, 519 (2026) pertaining to enforcing other federal election laws. The district court erred in demanding to know why Mr. Lyman needed public records and subjecting his reasons to court scrutiny. Congress already decided the question.

The district court misapplied this Court's decision in *Laufer v. Looper,* 22 F.4th 871 (10th Cir. 2022). Even if a plaintiff must plead downstream consequences for the denial of public records, Mr. Lyman's complaint did so on its face. As a candidate and voter, he cannot analyze Utah's voter list maintenance practices for conformity with federal law. He cannot evaluate defendant's enforcement of voter eligibility requirements. Worst of all, he cannot evaluate the performance of government officials in fostering the explicit statutory purposes of the NVRA such as ensuring accurate voter lists.

The district court erroneously applied *Public Citizen* and *FEC v. Akins*. Those cases establish an injury and standing whenever a plaintiff is denied information that a statute requires to be disclosed. *Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 449 (1989); *FEC v. Akins*, 524 U.S. 11, 21 (1998). The

4

NVRA's public disclosure provision mandates disclosure of the records Mr. Lyman requested.

The district court took *Laufer* where it never went. The plaintiff in *Laufer* had no interest or intention in using the information post litigation. Mr. Lyman is different in so many ways, ways pled in the complaint. The district court should be reversed.

## STANDARD OF REVIEW

*De novo* is the standard of review here. Granting a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) is subject to this standard. *Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*, 993 F.3d 802, 810-11 (10th Cir. 2021). This Court must "accept the complaint's well-pled factual allegations as true." *Jacobs v. Salt Lake City Sch. Dist.*, 154 F.4th 790, 798 n. 3 (10th Cir. 2025); *Calderón v. City & Cnty. of Denver*, 855 F. App'x 438, 445 (10th Cir. 2021). "[I]n reviewing the standing question, the court must be careful not to decide the questions on the merits for or against the plaintiff, and must therefore assume that on the merits the plaintiffs would be successful in their claims." *Am. Wild Horse Campaign v. Burgum*, 768 F. Supp. 3d 1291, 1306 (D. Colo. 2025) (quoting *Initiative & Reform Inst. v. Walker*, 450 F.3d 1082, 1093 (10th Cir. 2006)).

## ARGUMENT

### I.    Candidates Have Standing Under the NVRA.

Candidates for public office and voters have standing to request public election records under the NVRA, just as they have standing to enforce other federal election laws under *Bost*.

The day before the district court's decision, the United States Supreme Court issued an opinion on standing. The Supreme Court explained, "Courts sometimes make standing law more complicated than it needs to be." *Bost*, 146 S. Ct. at 523 (quotation omitted). The Court ruled that candidates have standing.

In *Bost*, plaintiffs "challenged Illinois's procedure for counting mail-in ballots received after election day." *Id*. at 518. The Supreme Court held the candidates had standing because "a candidate has a personal stake in the rules that govern the counting of votes in his election." *Bost*, 146 S. Ct. at 519. The Supreme Court explained candidates are uniquely situated because "[a]n unfair and inaccurate election plainly affects those who compete for the support of the people in a different way than it affects the people who lend their support." *Id.* at 520.

The district court acknowledged Mr. Lyman's roles as a former state representative and gubernatorial candidate, claiming that he would have been entitled to the information he seeks in these roles. App.101. Not so. Utah law prohibits the dissemination of certain registrants to *anyone*. *See* Utah Code Ann. §

20A-2-104(2)(a) (LexisNexis 2025). The district court is correct that Mr. Lyman has been a candidate for public office. But that still does not get him the public records sought it seems. The opposite is true. Mr. Lyman's status as a candidate vests standing. So do his roles as a voter and person entitled to public records.

*Bost* should control the standing analysis here. The Supreme Court in *Bost* held that a candidate's "interest extends to the integrity of the election—and the democratic process by which they earn or lose the support of the people they seek to represent." *Bost*, 146 S. Ct. at 522-23. As a former candidate and a declared candidate, Mr. Lyman has a personal stake in the integrity of Utah's elections. His stake manifests in his plans to study and analyze Utah's list maintenance activities to ensure Utah is complying with important election integrity statutes. Mr. Lyman is directly harmed by Utah withholding public information that would allow him to carry out his plans.

Though the *Bost* plaintiffs sought to enforce the federal election day statute, 2 U.S.C. § 7 and 3 U.S.C. § 1, the fundamentals on when candidates have standing are the same as here. Indeed, *Bost*'s plaintiffs' claim to Article III injury may be more tenuous than Mr. Lyman's. The Supreme Court in *Bost* allowed candidate standing to rest on a general departure from the law or a possible inaccurate vote tally to satisfy Article III standing. The concurrence allowed monetary expenditures to vest standing. *Bost*, 146 S. Ct. at 523 (Barrett, J., concurring in

7

judgment.) These may not be the precise harms listed in Mr. Lyman's complaint, but they rhyme.

Mr. Lyman has championed transparency in elections, even making it part of his gubernatorial campaign platform in 2024. *See* Phil Lyman, *Election Policy Vision*, LYMAN FOR UTAH – PHIL LYMAN FOR GOVERNOR https://web.archive.org/web/20240509161526/https://lymanforutah.com/elections/. (last visited April 7, 2026). Mr. Lyman sought to review election records to see if the law was being followed and the rolls were accurate.[2] Not knowing who is eligible to vote impairs his very ability to be a candidate and ascertain the state of the rolls. His injury is as robust as that suffered by Congressman Bost.

## II.    The NVRA Requires Transparency.

*Voter Reference Found., LLC v. Torrez* controls here. It is beyond dispute that the NVRA requires that states "make available for public inspection … all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible

---

[2] In March 2026, Mr. Lyman filed a declaration of candidacy for the United States House of Representatives with the Office of the Lt. Governor. *See* 2026 Declaration of Candidacy *available at* https://vote.utah.gov/wp-content/uploads/2026/03/CD3-Phil-Lyman.pdf.  "Fed. R. Evid. 201 allows courts to take judicial notice of facts 'at any stage of the proceeding' if the facts are 'not subject to reasonable dispute.'" *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1212-1213 (10th Cir. 2012).

voters." 52 U.S.C. § 20507(i)(1). This Court has already invalidated state statutory obstacles to this federal NVRA transparency requirement.

New Mexico's state statutory barriers to transparency fell under the NVRA. This Court knocked down state barriers to Congressional objectives. Federal law preempted a state law that impaired access to and use of covered election records. *Voter Reference Found.*, 160 F.4th at 1073. *See also Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 47 (1st Cir. 2024) (finding that "the Voter File plainly relates to the carrying out of Maine's voter list registration and maintenance activities and is thereby subject to disclosure under Section 8(i)(1)."). Yet Mr. Lyman's request was denied by the Lt. Governor, his recent political opponent.

This Court should knock down Utah's state statutory barriers as in *Voter Reference Foundation*.

Utah's statutes concealing portions of public records under the NVRA fall because of the plain statutory text that Congress used. The NVRA's use of "all records" reflects Congress's intent that the provision be construed broadly. *See Voter Reference Found.*, 160 F.4th at 1083-84 (holding New Mexico's restriction "counteracts and severely burdens the NVRA's enumerated purposes of public inspection and circulation of voter data by restricting the types of voter data that can be made publicly available and accessible.").

Congress did not say "most records" must be disclosed, or two-thirds of records, or even "nearly all." Congress said all.

### III.    Mr. Lyman Plausibly Alleges Additional Adverse Consequences Caused by the Denial of Public Records.

The district court erred in not finding standing and not crediting the downstream consequences pled in Mr. Lyman's complaint. Even if *why* a candidate makes a request for public records and *how* they will use the records is relevant for standing—which it is not—Mr. Lyman nevertheless pled downstream consequences in his complaint that would satisfy the district court's erroneous standing requirement.

Mr. Lyman alleged "downstream consequences" from the defendant's denial of records. At the motion to dismiss stage the allegations in the complaint must be accepted as true. *Jacobs*, 154 F.4th at 798 n.3; *see also Troutt v. Jones*, 415 F. App'x 935, 938 (10th Cir. 2011) ("At the pleading stage, courts 'presume that general allegations embrace those specific facts that are necessary to support the claim,' and 'general factual allegations of injury resulting from the defendant's conduct may suffice.'") (*quoting Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

The factual allegations establish downstream consequences.

**<u>First</u>**, the defendant's actions are impairing Mr. Lyman's ability to "study and analyze Utah's voter list maintenance programs and activities." App.18, 20.

The Supreme Court said that candidates "have an obvious personal stake in how the result is determined and regarded." *Bost*, 146 S. Ct. at 520. The defendant's denial of Mr. Lyman's request is a "refusal to permit [him] to scrutinize the [defendant's] activities to the extent [the NVRA] allows." *Public Citizen*, 491 U.S. at 449.

**Second**, the defendant's actions are impairing Mr. Lyman's ability to "assess Utah's enforcement of state and federal voter eligibility requirements." App.18, 20. The United States Supreme Court recently said that "[a]n unfair and inaccurate election plainly affects those who compete for the support of the people in a different way than it affects the people who lend their support." *Bost*, 146 S. Ct. at 520. The Complaint also alleges that "[w]here necessary, Mr. Lyman intends to use his findings to pursue legal action to enforce the NVRA and/or state voter list maintenance requirements." App.9.

Mr. Lyman, for example, could plausibly discover someone on the active voter rolls he knows to be deceased, such as a relative, but a large portion of those records are concealed from him. His harm is concrete.

**Third**, the defendant's actions are impairing Mr. Lyman's ability to "assess Utah's compliance with voter list maintenance obligations." App.18, 20. This Court recently held that "critical scrutiny and public audits of voter data were

11

envisioned by Congress in passing the NVRA." *Voter Reference Found.*, 160 F.4th at 1082.

The Complaint alleges that without access to the complete copy of the voter roll, Mr. Lyman "is unable to verify whether Utah is complying with state and federal voter eligibility requirements in light of various news accounts." App.19.

For example, if records show that records lack a date of birth (which is a requirement under the NVRA to obtain) then Mr. Lyman cannot assess compliance with federal law without those records. Further, "[w]ithout access to the Statewide Voter Registration List, Mr. Lyman cannot determine whether election officials are protecting *his* fundamental right to vote, a right the NVRA explicitly recognizes. 52 U.S.C. § 20501(a)(1)." App.19 (emphasis added). *See Judicial Watch, Inc. v. Griswold*, 2022 U.S. Dist. LEXIS 153290 at *5 (D. Colo. Aug. 25, 2022) (finding as sufficient for Article III standing the individual plaintiffs' allegations that the defendant's "alleged noncompliance with the NVRA undermines the individual plaintiffs' confidence in the integrity of the electoral process and discourages their participation.").

**Fourth**, the defendant's actions impair Mr. Lyman's ability to "assess whether Utah is employing voter list maintenance best practices." App.18, 20. The Supreme Court said that a candidate's interest "extends to the integrity of the

election—and the democratic process by which they earn or lose the support of the people they seek to represent." *Bost*, 146 S. Ct. at 522-523.

For example, Mr. Lyman cannot see if the records contain easy-to-fix duplicate records where the same person is registered multiple times. Duplicate registrations are common and easily detected on registration lists, if the defendant provided the records.

**Finally**, the defendant's actions are impairing Mr. Lyman's ability to "promote compliance with current obligations and best practices." App.18, 20.

The district court determined that Mr. Lyman's articulation of consequences "makes no real difference." App.101. In so holding, the district court heavily relies upon this Court's holding in *Laufer*, 22 F.4th 871. But Mr. Lyman's claim is unlike that claim.

### A. Tenth Circuit Precedent Does Not Foreclose Mr. Lyman's Downstream Consequences.

The Tenth Circuit's decision in *Laufer* is distinguishable from this case. There, the plaintiff was a Florida resident suing the owners of a hotel in Colorado. *Laufer*, 22 F.4th at 874. The plaintiff alleged that she was harmed by the defendants' *website's* alleged failures to comply with the Americans with Disabilities Act. *Id.* at 874-75. The court analyzed the plaintiff's informational injury under *Public Citizen* and *Akins* and found that she lacked standing.

13

> Unlike the plaintiffs in *Akins* and *Public Citizen*, Ms. Laufer has not alleged that she has any interest in using the information she obtained from the Elk Run Inn's ORS [online reservation system] beyond bringing this lawsuit. She has no plans to visit Craig, Colorado. She did not attempt to book a room at the Elk Run Inn and has no intent to do so. She therefore has not suffered an injury of the type recognized in *Public Citizen* or *Akins*.

*Laufer*, 22 F.4th at 881. The court was aware of the *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) decision and interpreted it as being in accord with *Public Citizen* and *Akins*. Citing *TransUnion*, the court stated that "'[a]n asserted informational injury that causes no adverse effects cannot satisfy Article III.'… In *Public Citizen* and *Akins*, the plaintiffs identified such adverse effects. They alleged an intent to use the information to participate in the judicial selection and the political process, respectively." *Laufer*, 22 F.4th at 881 (citations omitted).

This Court should be very wary of importing an interpretation of *TransUnion* not in harmony with all the circuits and that would clip access to government information that Congress already deemed to be public.

Unlike the oddball facts of *Laufer*'s online housing testing sleuth, Mr. Lyman alleges a real concrete adverse effect. The denial of information affects his ability to run for office and monitor the government's compliance with federal law in the very electoral environment he runs in. Utah law prevents him from obtaining many voter registration records, even though the NVRA requires disclosure of "all records" concerning voter list maintenance. *Compare* 52 U.S.C. § 20507(i)(1) *with*

14

Utah Code Ann. § 20A-2-104(4)(d)(i)-(ii) and Utah Code Ann. § 20A-2-104(2)(a).

Because of this refusal, Mr. Lyman cannot analyze Utah's list maintenance

practices, assess whether officials are complying with state and federal voter

eligibility requirements, determine whether Utah is following best practices, or

confirm that *his own right to vote* is being protected.

This impairment is personal and concrete. The plaintiff in *Laufer* confessed

she had no interest in even using the data. She did "not allege[] that she has any

interest in using the information she obtained from the Elk Run Inn's ORS beyond

bringing this lawsuit." *Laufer*, 22 F.4th at 881. Mr. Lyman seeks information

directly tied to his quest for public office and as a Utah voter.

Congress designed the NVRA's Public Disclosure Provision to allow the

public to monitor whether election officials are maintaining accurate and current

rolls. Courts across the country have recognized that statewide voter registration

files fall squarely within this statutory mandate. *See Bellows*, 92 F.4th at 47.

The records the defendant denied to Mr. Lyman are not trivial. They

represent a significant portion of Utah's voter roll. Denying access to those records

makes it impossible for Mr. Lyman to evaluate whether Utah is getting the NVRA

job done.

The district court likened Mr. Lyman to the *Laufer* plaintiff but downplayed

the essential distinction between the cases—the *Laufer* plaintiff had no intention to

15

use the information she sought. Mr. Lyman does. That plaintiff "had no intention of booking a room at the hotel," App.99, while Mr. Lyman has specific intended uses for the requested records that impact him personally. Mr. Lyman's alleged downstream consequences are not simply a "repackage[ing]" of his "core claim," App.101; they are concrete uses for the requested records and consequences resulting from Utah's refusal to provide them.

*Laufer* is a weak guidepost here.

The district court paints Mr. Lyman as a "tester," faulting him for choosing "to file this case in the Tenth Circuit where [*Laufer*] controls." App.101. Congress put Utah in the Tenth Circuit. Mr. Lyman had no choice. *Laufer* doesn't hem in the NVRA. Mr. Lyman is no tester. He is a former state representative, current candidate for United States Congress, and life-long resident of Utah. The district court erred when it used a case involving Americans with Disabilities Act testing to block a candidate and citizen from using transparency provisions Congress included in the NVRA.

Mr. Lyman already did exactly what the district court said was required—he "demonstrate[d] that the withheld information has 'some relevance' to [him] beyond the litigation itself." App.101. Mr. Lyman's allegations and those of the *Laufer* plaintiff do not look alike.

16

**B. Other Courts Found Standing with Identical Pleadings.**

Another court recently found identical downstream consequences as those pled here vested standing. The U.S. District Court for the District of Arizona recently held that the inability to analyze voter data and propose policy reforms, constitute concrete and particularized injuries that satisfy standing requirements. *Pub. Int. Legal Found. v. Fontes*, No. CV-25-02722-PHX-MTL, 2026 U.S. Dist. LEXIS 3422 at *12-14 (D. Ariz. Jan. 5, 2026).

In *Fontes*, the plaintiff sought to propose "best practices for voter registration integrity and allege[d] that denial of the records prevents it from providing policy advice and testimony to state officials and Congress." *Id.* at *12. Similarly, the Complaint alleged that the defendant's actions are impairing Mr. Lyman's ability to "promote compliance with current obligations and best practices." App.18, 20. The district court in this case found those same allegations wanting.

In *Fontes*, the court found that the plaintiff's alleged harms "are particularized to the Foundation because they affect the Foundation's own activities, not a generalized public interest," "involve the inability to produce specific work product (reports, testimony, policy recommendations)…" and "are actual and not hypothetical because the Foundation alleges it sought the records,

17

was denied, and cannot now complete the work it intended to do with them." *Id.* at **12-13. Again, the district court found those allegations wanting here.

In *Fontes*, the court found that "[t]he [plaintiff's] alleged inability to analyze that data and advocate for corrective measures implicates the NVRA's objectives." *Id.* at *13. Mr. Lyman pled the same. App.18, 20. Once more, not enough for the district court here.

Nothing in Tenth Circuit jurisprudence mandated the course the district court chose.

### C. Other Circuit Precedents Do Not Foreclose Mr. Lyman's Downstream Consequences.

The district court relied upon other, out-of-circuit persuasive authority to support its decision. All are distinguishable.

#### *Campaign Legal Center v. Scott*

First, in *Campaign Legal Center v. Scott*, the Fifth Circuit interpreted the Supreme Court's decision in *TransUnion* to mean that "even in public disclosure-based cases, plaintiffs must and can assert 'downstream consequences,' which is another way of identifying concrete harm from governmental failures to disclose." *Campaign Legal Center v. Scott*, 49 F.4th 931, 938 (5th Cir. 2022). The Fifth Circuit explained that the plaintiffs had three theories for standing. First, as "civic engagement organizations" they "have a right to the requested registrant records." *Id*. at 936 (citations omitted). Second, they said they were injured by "the public

not having visibility into how Texas is keeping its voter lists[.]" *Id*. Third, they said

they were injured by "the public not having visibility into . . . properly registered

Texans being discriminated against and burdened in their right to vote." *Id*. The

Fifth Circuit rejected all three, saying the first had already been rejected "and the

other two theories encompass no more than alleged injuries *to the public* and

*affected Texas voters writ large*." *Id*. at 936 (emphasis added).

Mr. Lyman contends that although the Fifth Circuit misapplied *TransUnion,*

Mr. Lyman can nevertheless satisfy the standard in *Scott.* His complaint alleges

both an informational injury and additional injuries, or "downstream

consequences," *id*. at 937, caused by the deprivation of information. The *Scott*

plaintiffs alleged speculative injuries to others who were not even before the court.

49 F.4th at 936 ("*the public* and *affected Texas voters* writ large). The

"downstream consequences" Mr. Lyman pleads resemble what Judge Ho's

concurrence said would be satisfactory. Among the consequences pled that hit the

mark are the need "to engage in public advocacy about a pressing matter of

policy." *Scott*, 49 F.4th at 940 (Ho, J., concurring in the judgment), *see also United

States v. McDowell*, No. 3:19-cr-14-RGJ, 2023 U.S. Dist. LEXIS 161185, at *6-7

(W.D. Ky. Sep. 11, 2023) ("Smithers also appears to satisfy the Fifth Circuit's

interpretation, which suggests that a downstream consequence includes the

inability to use the sealed information for a distinct, civic purpose.").

19

### *Pub. Int. Legal Found. v. Sec'y of Pa.*

The district court's reliance on the Third Circuit in *Pub. Int. Legal Found. v. Sec'y of Pa.*, 136 F.4th 456 (3d Cir. 2025), is also misplaced. The Third Circuit misapplied the Supreme Court's holding in *TransUnion* to deny standing. *See infra* at IV. Further, the Third Circuit focused on the nature of the plaintiff, referring to it as "an out-of-state 'public interest organization,'" and determining the organization lacked standing as an organization. *Id*. at 469. The ruling on organizational standing for an out of state corporation provides little to rest the district court's opinion on Mr. Lyman, particularly after *Bost*.

### *Pub. Int. Legal Found. v. Benson*

The same is true of the district court's reliance on a case from the Sixth Circuit. Not only did the Sixth Circuit misapply *TransUnion*, *see infra* at IV, but the court also focused on the fact that the plaintiff was an out-of-state organization. *See Pub. Int. Legal Found. v. Benson*, 136 F.4th 613, 631 (6th Cir. 2025) (in contrast to Mr. Lyman, "PILF is not a registered voter, nor has it claimed organizational standing on behalf of registered voters, in the voting jurisdiction at issue.").

### IV.    Mr. Lyman Is Injured from the Denial of Public Records.

When public information is denied to the public seeking to enforce a public information right, the standing injury occurs at the denial of information. The

20

Federal Freedom of Information Act ("FOIA") provides a helpful standing framework.

The Supreme Court confirmed "decisions interpreting the Freedom of Information Act have never suggested that those requesting information under it need show more than that they sought and were denied specific agency records." *Public Citizen*, 491 U.S. at 449 (collecting cases).

The U.S. Court of Appeals for the District of Columbia specifically reached the same standing questions here. "Anyone whose request for specific information has been denied has standing to bring an action; the requester's circumstances— why he wants the information, what he plans to do with it, what harm he suffered from the failure to disclose—are irrelevant to his standing." *Zivotofsky v. Sec'y of State*, 444 F.3d 614, 617 (D.C. Cir. 2006) (citing *Public Citizen*, 491 U.S. at 449).

In *Public Citizen*, 491 U.S. at 446-47, the Supreme Court held that FOIA's standing framework applies to the Federal Advisory Committee Act ("FACA"), a law that, like the NVRA, contains a public disclosure requirement. "There is no reason for a different rule here." *Id*. at 449. "As when an agency denies requests for information under [FOIA], refusal to permit appellants to scrutinize the ABA Committee's activities to the extent FACA allows constitutes a sufficiently distinct injury to provide standing to sue." *Id*.

In *FEC v. Akins*, the Supreme Court held that FOIA's standing framework applies to the Federal Election Campaign Act of 1971 ("FECA"), a law that contains a broad public disclosure requirement like the NVRA. 524 U.S. 11, 14-16. Citing *Public Citizen*, the Supreme Court held, "this Court has previously held that a plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute." *Id*. at 21 (citing *Public Citizen*, 491 U.S. at 449).

Squarely colliding with the issues in this case, the Court explained, "[t]he 'injury in fact' that respondents have suffered consists of their inability to obtain information … that, on respondents' view of the law, the statute requires that [the subject of the FECA complaint] make public." *Id*. at 21. The inability to get information under a federal disclosure statute was the injury in fact. Mr. Lyman here is in the same predicament and has suffered the same sort of injury. As in *Akins*, Mr. Lyman has standing.

There is more Supreme Court authority supporting Mr. Lyman's standing. The *Akins* Court relied on *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), a Fair Housing Act case that also supports Mr. Lyman. The Court said that the "deprivation of information about housing availability constitutes 'specific injury' permitting standing." *Akins*, 524 U.S. at 21.

22

These Supreme Court decisions—*Akins*, *Public Citizen* and *Havens Realty*, have guided lower courts and applied FOIA's simple bright line standing analysis to the NVRA's Public Disclosure Provision. 52 U.S.C. § 20507(i)(1). Does the requestor have the right to the information under the statue? If the requestor has the right to the information and is denied, the requestor has suffered an injury in fact.

Courts have followed this simple bright line test for standing. *See Voter Reference Found., LLC v. Galvin*, No. 24-cv-12592-DJC, 2026 U.S. Dist. LEXIS 64416 (D. Mass. Mar. 26, 2026). Rejecting the logic of the district court below here, that district court found standing. The *Galvin* court noted "the heightened standard adopted by the Third, Sixth, and Fifth Circuit." *Galvin*, 2026 U.S. Dist. LEXIS 64416, *13. The *Galvin* court "[a]ssum[ed], without deciding, that the historical informational injury standard applies to these claims, the alleged denial of information to which VRF was entitled is sufficient to establish an injury in fact." *Id*. *15. On that point, the district court was correct. But it went further.

The *Galvin* court concluded that even if *TransUnion* controlled, the plaintiff established downstream consequences from the Secretary's denial of information under the NVRA. For example, the plaintiff was injured because it was unable to "shar[e] the data online so interested citizens, including Massachusetts voters, can review the data and help identify and report inaccuracies or inconsistencies," "conduct comparative analysis" on voting records, or "access statewide data

23

produced at the same point in time," along with increased costs associated with securing the data through other means. *Id*. *17-18.

Other district courts have been on Mr. Lyman's side. The United States District Court for the Western District of Wisconsin found that "[a] failure to obtain information required to be disclosed under law is a concrete and particularized injury." *Pub. Int. Legal Found., Inc. v. Wolfe*, No. 24-cv-285-jdp, 2024 U.S. Dist. LEXIS 216250, at *10 (W.D. Wis. Nov. 26, 2024)*; see also Pub. Int. Legal Found., Inc. v. Simon*, 774 F. Supp. 3d 1037, 1042 (D. Minn. 2025) (citing *Pub. Citizen* and *Akins*).

The Eastern District of Virginia explained, "[f]or a plaintiff to sufficiently allege an informational injury, it must first allege that the statute confers upon it an individual right to information, and then that the defendant caused a concrete injury to the plaintiff in violation of that right." *Project Vote/Voting for Am., Inc. v. Long*, 752 F. Supp. 2d 697, 702 (E.D. Va. 2010). Because "the NVRA provides a public right to information," *id*. at 703, and there is "no dispute that the plaintiff has been unable to obtain the [r]equested [r]ecords," "the plaintiff's alleged informational injury is sufficient to survive a motion to dismiss for lack of standing." *Id*. at 703-04; *see also, Pub. Int. Legal Found. v. Bennett*, No. H-18-0981, 2019 U.S. Dist. LEXIS 39723, at *8-10 (S.D. Tex., Feb. 6, 2019) (denying motion to dismiss), *adopted by Pub. Int. Legal Found., Inc. v. Bennett*, No. 4:18-

24

CV-00981, 2019 U.S. Dist. LEXIS 38686 (S.D. Tex., Mar. 11, 2019); *Jud. Watch, Inc. v. King*, 993 F. Supp. 2d 919, 923 (S.D. Ind. 2012) (citing *Akins*, 524 U.S. at 24-25).

The district court's application of *TransUnion* to foreclose Mr. Lyman's standing is incorrect. *See Griswold*, 2022 U.S. Dist. LEXIS 153290 at *7.

The Supreme Court explicitly distinguished informational injury cases like this one from *TransUnion*. "This case does not involve such a public-disclosure law." *TransUnion*, 594 U.S. at 441. *TransUnion* involved the Fair Credit Reporting Act, a law that regulates private parties, not the government.

Mr. Lyman's claims are not based upon a risk of harm that has not materialized. There are no errors waiting to manifest or sitting in a desk drawer. *See TransUnion*, 594 U.S. at 434 ("[T]he plaintiffs' harm is roughly the same, legally speaking, as if someone wrote a defamatory letter and then stored it in her desk drawer. A letter that is not sent does not harm anyone, no matter how insulting the letter is."). Rather, Mr. Lyman's claims are based upon the defendant's decision to *deny* Mr. Lyman's specific request for list maintenance records that must be open to inspection under federal law.

It is conceded that this Court faces crosswinds of competing authority on what constitutes an injury under the NVRA. Two principles should guide the choice of which path to take. First, Congress has spoken. Congress decided that "all" covered

25

records are available to Mr. Lyman. Second, the Supreme Court confined *TransUnion* to *TransUnion*'s circumstances and explicitly walled off public disclosure cases from its reach. This Court should follow the language passed by Congress and the Supreme Court's limiting principles explicitly contained in the *TransUnion* decision. Mr. Lyman has a right to the public records and has been injured because he was denied access.

## CONCLUSION

Mr. Lyman requests this Court reverse the district court's judgment and remand this action.

Dated: April 7, 2026.

Respectfully submitted,

/s/ Kaylan Phillips
Kaylan Phillips
PUBLIC INTEREST LEGAL FOUNDATION
107 S. West Street, Ste 700
Alexandria, VA 22314
(703) 745-5870
kphillips@publicinterestlegal.org

Goud P. Maragani
Maragani Law Group
4523 West Park Bend Court
Riverton, UT 84096
(385) 237-7960
goud.p.maragani@proton.me

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Appellant Mr. Lyman requests oral argument because of the important interests at issue, most notably, a state's ability to limit an individual's access to documents made public under federal law. Mr. Lyman believes that oral argument will materially assist this Court in resolving the Article III standing question at issue here.

## **CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)**

This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B), because it contains 5,652, less than the 13,000 words permitted for a principal brief of a party, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

The brief also complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5), and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point type.


Dated: April 7, 2026


/s/ Kaylan Phillips
Kaylan Phillips

## **CERTIFICATE OF DIGITAL SUBMISSION**

I hereby certify that with respect to the foregoing:

(1) all required privacy redactions have been made per Fed. R. App. P. 25(a)(5) and 10th Cir. R. 25.5;

(2) that this document is a native PDF document;

(3) that the ECF submission is an exact copy of those documents;

(4) the digital submission has been scanned for viruses with the most recent version of a commercial virus scanning program, Bitdefender Endpoint Security Tools Antimalware, last updated on April 6, 2026; and

(5) according to the program, this document is free of viruses.


/s/ Kaylan Phillips
Kaylan Phillips

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 7, 2026, pursuant to Fed. R. App. P. 25 and 10th Cir. R. 25.4, I electronically filed the foregoing using the Court's CM/ECF system, which in turn caused electronic notifications of such filing to be sent to all counsel of record.

<u>/s/ Kaylan Phillips</u>
Kaylan Phillips

## INDEX OF ATTACHMENTS

**Memorandum and Order (Jan. 15, 2026)**..........................................Attachment 1

**Judgement of the District Court (Jan. 15, 2026)**..............................Attachment 2

# ATTACHMENT 1

THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| PHIL LYMAN,<br><br>    Plaintiff,<br><br>v.<br><br>DEIDRE HENDERSON, in her official capacity as Lt. Governor of the State of Utah,<br><br>    Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT LIEUTENANT GOVERNOR DEIDRE HENDERSON'S [18] MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1)**<br><br>Case No. 4:25-cv-00069-DN-PK<br><br>District Judge David Nuffer |

Plaintiff Phil Lyman asserts that he has been denied the statutory right under the National Voting Rights Act of 1993 ("NVRA") to inspect the Statewide Voter Registration List of the State of Utah ("Utah voter rolls").[1] Mr. Lyman alleges that Defendant Lieutenant Governor ("Lt. Governor") Deidre M. Henderson violated his federal statutory right by relying on Utah law, which he argues the NVRA preempts, and by denying him access to Utah's voter rolls beyond what is already publicly available.[2] Mr. Lyman claims a continuing informational injury persists despite exhausting every administrative remedy to avoid litigation.[3]

Lt. Governor Henderson moves to dismiss Mr. Lyman's case for lack of standing.[4] The Lt. Governor contends that under *TransUnion v. Ramirez*,[5] Mr. Lyman has "failed to establish . . . concrete injury-in-fact based on generalized grievances from alleged violations of

---

[1] Complaint, docket no. 1, filed June 6, 2025.

[2] *Id*. ¶¶ 21-24.

[3] *Id*. ¶¶ 25, 48.

[4] Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) ("Motion"), docket no. 18, filed August 4, 2025.

[5] *Id*. at 8 (*citing TransUnion, LLC v. Ramirez,* 594 U.S. 413, 426-27 (2021)).

the NVRA."[6] The Lt. Governor argues that a statutory injury alone is insufficient. The Lt. Governor argues that the facts alleged "underscores the lack of any real downstream consequences by alleging nothing more than the 'informational injury' as [Mr. Lyman] characterizes it."[7]

Mr. Lyman opposes the Motion asserting, "the Lt. Governor's factual focus in *TransUnion* steers her legal analysis astray" and is "flat wrong."[8] Instead, Mr. Lyman states that the holding in *TransUnion* is distinguishable, and that "the standing inquiry is controlled by *Public Citizens* [*v. United States Dep't of Justice*] and [*FEC v.* ] *Akins*."[9] Mr. Lyman says public disclosure obligations, like the NVRA, are less like the injuries articulated in *TransUnion*, and more similar to federal Freedom of Information Act ("FOIA") injuries.[10] On this basis, Mr. Lyman asks that the Motion be denied.

Lt. Governor Henderson replies stating Mr. Lyman is recycling arguments previously rejected by the Third, Fifth, and Sixth Circuits.[11] According to Lt. Governor Henderson, each circuit court "held that plaintiffs asserting mere 'informational injury' under the NVRA [do] not satisfy Article III standing. And those courts properly applied the Supreme Court's analysis in *TransUnion*."[12] Accordingly, the Lt. Governor moves for an order that agrees with those circuits holding that Mr. Lyman has failed to "identify downstream consequences that have a nexus to

---

[6] Motion at 14.

[7] *Id*. at 11.

[8] Lyman's Response to Motion to Dismiss ("Opposition") at 4, docket no. 27, filed August 29, 2025.

[9] *Id*. at 5 (cleaned up).

[10] *Id*. at 2-5.

[11] Lt. Governor's Reply in Support of Motion to Dismiss ("Reply") at 2, docket no. 28, filed September 12, 2025 (citing *Public Interest Legal Foundation v. Secretary Commonwealth of Pennsylvania*, 136 F.4th 456 (3rd Cir. 2025); *Campaign Legal Center v. Scott*, 49 F.4th 931 (5th Cir. 2022); *Public Interest Legal Foundation v. Benson*, 136 F.4th 613 (6th Cir. 2025)).

[12] Reply at 2.

the interest Congress sought to protect with the NVRA." Such a holding would require a

dismissal of this case.[13]

After the parties submitted their briefs, but before this order was issued, the U.S. Court of

Appeals for the Tenth Circuit released its opinion in *Voter Reference Found. v. Torrez*.[14] In

*Torrez*, the Tenth Circuit addressed standing under the NVRA for the first time since the

Supreme Court's decision in *TransUnion*.[15] The Tenth Circuit found standing in *Torrez* because

the claim "does not rest on an informational injury; it rests on the statute's chilling effect" as a

basis for a threat of criminal prosecution.[16] Because *Torrez* was published after the parties

submitted their initial memoranda, supplemental briefing was ordered to address its potential

impact on this case.[17] The Lt. Governor submitted her supplemental memorandum on December

19, 2025.[18] Mr. Lyman filed his supplemental brief regarding *Torrez* on January 2, 2026.[19] Mr.

Lyman filed a subsequent supplemental notice of the District of Arizona's decision in *Public

Interest Legal Foundation v. Fontes*.[20] All submissions have been fully considered in this order.

A thorough review of the memoranda, exhibits, supplemental briefs, and applicable law

has been completed. For the reasons stated below, the Motion is GRANTED. Furthermore, Mr.

---

[13] Reply at 7.

[14] *Voter Reference Found., LLC v. Torrez*, 160 F.4th 1068 (10th Cir. 2025).

[15] *Id*. at 5.

[16] *Id*.

[17] Docket Text Order, docket no. 36, filed December 5, 2025.

[18] Defendant Lt. Governor Henderson's Memorandum Regarding Supplemental Authority in Support of Motion to Dismiss ("Lt. Governor's Supplement"), docket no. 37, filed December 19, 2025.

[19] Plaintiff's Supplemental Memorandum ("Lyman's Supplement"), docket no. 38, filed January 2, 2026.

[20] Lyman's Third Notice of Supplemental Authority ("Fontes Supplement"), docket no. 39, filed January 13, 2026 (*discussing Public Interest Legal Foundation v. Fontes*, No. CV-25-02722-PHX-MTL, 2026 WL 45037 (D. Ariz. Jan. 5, 2026).

Lyman's Motion for Summary Judgment[21] and the Lt. Governor's Motion for Relief under

Federal Rule of Civil Procedure 56(d)[22] are both FOUND MOOT.

1    BACKGROUND ............................................................................................ 4
2    STANDARD OF REVIEW ........................................................................... 7
3    DISCUSSION ................................................................................................ 9
      3.1    A Statutory Right Does Not Automatically Create an Injury In Fact .................... 9
            3.1.1    A Private Right of Action Exists Under the NVRA. ............................... 10
            3.1.2    An Asserted Informational Injury That Causes No Adverse Effects Cannot Confer Article III Standing. ....................................... 10
            3.1.3    The Supplemental Authority Informs Without Binding This Case. ......... 16
            3.1.4    Circuit Courts Agree That After *TransUnion* an Informational Injury Without Downstream Consequences Does Not Establish Standing. ........ 21
4    CONCLUSION ............................................................................................... 25
5    ORDER .......................................................................................................... 26

## 1    BACKGROUND

Phil Lyman is a registered voter in the state of Utah.[23] Mr. Lyman has served as County

Commissioner for San Juan County[24] and as a Utah state representative.[25] Most recently, Mr.

Lyman ran for Governor of Utah.[26] Currently, Mr. Lyman does not hold political office in Utah

and is a private citizen. Mr. Lyman brings this suit as a private citizen, seeking voter list

maintenance documents to assess what Mr. Lyman calls the "Statewide Voter Registration List"

(hereinafter "Utah's voter roll").[27]

On September 22, 2024, Mr. Lyman sent a letter to Lt. Governor Henderson's office

requesting "voter list maintenance records," including: "a copy of the statewide voter registration

---

[21] Lyman's Motion for Summary Judgment, docket no. 17, filed July 29, 2025.

[22] Motion for Relief under Federal Rule of Civil Procedure 56(d), docket no. 33, filed November 24, 2025.

[23] Complaint ¶ 3.

[24] *Chilcoat v. San Juan County*, No. 4:19-CV-00027-DN, 2025 WL 3034914 (D. Utah Oct. 30, 2025).

[25] *United States v. Lyman*, No. 2:14-CR-00470 DN, 2019 WL 5310263, at *1 (D. Utah Oct. 21, 2019).

[26] *Lyman v. Cox*, 2024 UT 35, 556 P.3d 49, *cert. denied*, 145 S. Ct. 1057 (2025), *reh'g denied*, 145 S. Ct. 1323 (2025).

[27] Complaint ¶ 3.

database, including data for voters classified as 'private' and 'withheld'".[28] Mr. Lyman requested access to every Utah voter's "year of birth information" which is restricted under Utah law.[29] In the letter Mr. Lyman stated he was entitled to review the Utah voter rolls, despite Utah law forbidding private citizens from having access to these rolls, because the NVRA "as a federal enactment, supersedes and preempts Utah law."[30] Therefore, according to Mr. Lyman, "a denial of [his] request would violate the NVRA." Mr. Lyman alleges that Lt. Governor Henderson never responded to his letter.[31]

In October 2024, Mr. Lyman again wrote to the Lt. Governor's office, again seeking access to records pursuant to the NVRA.[32] On November 4, 2024, the Lt. Governor's office responded, directing Mr. Lyman to the office's website for access to the public version of the Utah voter roll. Regarding Mr. Lyman's request for portions of the Utah voter roll designated "private" or "withheld," the Lt. Governor's office stated that she "does not have discretion to ignore [the] state statute and provide unrestricted access to the state's voter rolls as [Mr. Lyman has] requested."[33] Mr. Lyman says he has yet to be provided with, or permitted to inspect, the portions of the Utah voter roll designated "private" or "withheld."[34]

Mr. Lyman subsequently retained the Public Interest Litigation Foundation ("PILF") as counsel.[35] On March 7, 2025, PILF allegedly sent a letter to the Lt. Governor's office stating that

---

[28] *Id*. ¶ 21.

[29] Id. ¶ 58.

[30] *Id*. ¶ 23.

[31] *Id*. ¶ 24.

[32] *Id.*

[33] *Id*. ¶ 26; Exhibit B to Complaint.

[34] *Id*. ¶ 26.

[35] *Id*. ¶ 27.

5

she was in violation of the NVRA "for failure to permit inspection of voter list maintenance records as required by 52 U.S.C. § 20507(i)."[36] PILF's letter gave the Lt. Governor 90 days to fulfill Mr. Lyman's request, "or a lawsuit would be filed against her" under 52 U.S.C. § 20510(b) of the NVRA.[37]

Neither PILF nor Mr. Lyman received a response from the Lt. Governor or any other person in her office following PILF's Letter.[38] To date, Mr. Lyman has not been given access to review portions of the Utah voter roll designated "private" or "withheld."[39] Mr. Lyman can see the portions of Utah's voter rolls designated "public" on the Lt. Governor's website.[40]

Mr. Lyman complains that he is injured, and continues to be injured, by the Lt. Governor's actions described above.[41] Mr. Lyman says he has exhausted all administrative remedies before pursing this litigation.[42] Mr. Lyman claims that he has satisfied the pre-litigation notice requirement provided under the NVRA.[43] Should he succeed in this litigation, Mr. Lyman states that he intends to use his access to the Utah voter rolls to pursue legal action to enforce the NVRA and "state voter list maintenance requirements."[44] Mr. Lyman states he "intends to use his findings to propose and promote best practices and solutions for specific and general voter list maintenance problems faced by election officials."[45]

---

[36] *Id*. ¶¶ 27-29; (*citing* the "Notice Letter," Exhibit C).

[37] *Id*.

[38] *Id*. ¶ 30.

[39] *Id*. ¶ 31.

[40] *Id*.

[41] *Id*. ¶ 36.

[42] *Id*. ¶ 25.

[43] *Id*. ¶ 33.

[44] *Id*. ¶ 3.

[45] *Id*. ¶ 3.

## 2   STANDARD OF REVIEW

Lt. Governor Henderson moves to dismiss Mr. Lyman's complaint under Fed. R. Civ. P. 12(b)(1)[46] for lack of subject-matter jurisdiction. A Rule 12(b)(1) motion to dismiss may take one of two forms: the motion may be a facial attack that "questions the sufficiency of the complaint;"[47] or, the motion may be a factual attack that "challenge[s] the facts upon which subject matter jurisdiction depends."[48] When a motion raises a facial challenge to the complaint, "a district court must accept the allegations in the complaint as true."[49] However, on a factual challenge, the court is not required to accept the complaint's allegations as true and "may not presume" that they are true.[50] A factual Rule "12(b)(1) motion is considered a 'speaking motion' and can include references to evidence extraneous to the complaint."[51] And a court enjoys "wide discretion to . . . resolve disputed jurisdictional facts."[52]

"Article III of the [United States] Constitution limits federal courts' jurisdiction to certain 'Cases' and 'Controversies.'"[53] "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."[54] "'One element of the case-or-controversy requirement' is that plaintiffs 'must establish that they have standing to sue.'"[55] "This is the threshold question in

---

[46] Motion at 1.

[47] *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).

[48] *Id*.

[49] *Id*.

[50] *Id*. at 1003.

[51] *Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir. 1987).

[52] *Id*.

[53] *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408, (2013).

[54] *Id.* (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006)).

[55] *Id.* (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)).

7

every federal case[.]"[56] Each element of standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation."[57] "For purposes of ruling on a motion to dismiss for want of standing . . . courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party."[58]

"Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III."[59] "For standing purposes, therefore, an important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law."[60] In other words, "under Article III, an injury in law is not an injury in fact."[61] "Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions."[62] Thus, "[o]nly those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." [63]

---

[56] *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

[57] *Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992).

[58] *Seldin*, 422 U.S. at 501.

[59] *Laufer v. Looper*, 22 F.4th 871, 877 (10th Cir. 2022) (*quoting TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021)).

[60] *Looper*, 22 F.4th at 877 (*quoting TransUnion*, 594 U.S. at 425).

[61] *Id*.

[62] *Id.* (quotations omitted).

[63] *Id*.

## 3   DISCUSSION

The parties positioned themselves on opposite sides of an apparent circuit split over NVRA standing.[64] The Lt. Governor urges alignment with the Third, Fifth, and Sixth Circuits, arguing that Mr. Lyman lacks standing because he cannot allege the "downstream consequences" that flow from an informational injury.[65] The Lt. Governor contends that the Tenth Circuit's holding in *Laufer v. Looper* reflects the same reasoning.[66] Mr. Lyman argues that those cases, and *Looper*, are distinguishable. He says his informational injury is akin to a FOIA injury and favors First Circuit precedent he says recognizes standing for informational injuries under the NVRA.[67]

Each side of the apparent circuit split is addressed below, along with *Looper*. The parties' supplemental briefing on *Torrez* has been considered. The precedent is clear: Mr. Lyman's informational injury, standing alone, does not establish NVRA standing.

### 3.1   A Statutory Right Does Not Automatically Create an Injury In Fact

The parties dispute whether Mr. Lyman may proceed. To resolve the standing question, this order proceeds in four steps: (1) whether the NVRA confers statutory standing and creates a private right of action; (2) whether any Tenth Circuit precedent governs; (3) how the Tenth Circuit's decision in *Torrez* informs that inquiry; and (4) how other circuits have addressed the same question and what guidance their reasoning offers here.

---

[64] Motion at 14-16; Opposition at 4-6.

[65] Reply at 2-5.

[66] *Id*. 1-3.

[67] Opposition at 11-13 (*citing Public Interest Legal Foundation, Inc. v. Bellows*, 92 F.4th 36, 48 (1st Cir. 2024)).

Though Lyman has statutory standing (an injury in law), that is insufficient to establish a concrete and particularized injury in fact sufficient to establish Article III standing (an injury in fact) for an NVRA claim. Statutory standing alone does not always add up to injury in fact.

### 3.1.1  A Private Right of Action Exists Under the NVRA.

The Tenth Circuit recently confirmed in *Torrez* that the NVRA provides a private right of action.[68] The NVRA expressly provides a private right of action:

**(b) Private right of action**

(1) A person who is aggrieved by a violation of this chapter may provide written notice of the violation to the chief election official of the State involved.

(2) If the violation is not corrected within 90 days after receipt of a notice under paragraph (1), or within 20 days after receipt of the notice if the violation occurred within 120 days before the date of an election for Federal office, the aggrieved person may bring a civil action in an appropriate district court for declaratory or injunctive relief with respect to the violation.

(3) If the violation occurred within 30 days before the date of an election for Federal office, the aggrieved person need not provide notice to the chief election official of the State under paragraph (1) before bringing a civil action under paragraph (2).[69]

Neither party disputes that the statutory requirements have been met.[70] Therefore, accepting as true all material allegations of the complaint and construing the facts in favor of Lyman as non-movant,[71] the Complaint alleges sufficient facts to establish statutory standing.

### 3.1.2  An Asserted Informational Injury That Causes No Adverse Effects Cannot Confer Article III Standing.

The parties dispute which Supreme Court precedent governs standing under the NVRA. The Lt. Governor contends Mr. Lyman's complaint is "facially deficient because the allegations

---

[68] *Torrez*, 160 F.4th at 1078.

[69] 52 U.S.C. § 20510(b)(1-3).

[70] Motion at 6.

[71] *Seldin*, 422 U.S. at 501 .

fall short of meeting Plaintiff's burden to demonstrate a concrete and particularized injury in fact." [72] The Lt. Governor relies on *Spokeo, Inc. v. Robins* and *TransUnion, LLC v. Ramirez* as controlling authority. [73] Mr. Lyman counters that the NVRA's "standing framework originates with the federal Freedom of Information Act ("FOIA"),"[74] making his informational injury sufficient under *FEC v. Akins*[75] and *Public Citizen v. United States Dep't of Justice*.[76]

In both *Spokeo* and *TransUnion* the Supreme Court "rejected the proposition that 'a plaintiff automatically satisfies the injury in fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'"[77] Standing presents a threshold question of law that must first be addressed. [78]

"For Article III standing, a plaintiff must have (1) 'suffered an injury in fact,' (2) that is 'fairly traceable to the challenged action of the defendant,' and (3) that is likely to be 'redressed by a favorable decision.'"[79] An "injury in fact" is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical."[80] "An asserted informational injury that causes no adverse effects cannot satisfy Article III."[81]

---

[72] Motion at 5-6.

[73] Motion at 3-6.

[74] Opposition at 2.

[75] Complaint ¶ 60 (*citing FEC v. Akins*, 524 U.S. 11, 21 (1998)).

[76] Opposition at 2 (*citing Public Citizen v. United States Dep't of Justice*, 491 U.S. 440, 449 (1989)).

[77] *TransUnion LLC v. Ramirez*, 594 U.S. 413, 414 (2021) (*quoting Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016), as revised (May 24, 2016)).

[78] *Comm. to Save the Rio Hondo v. Lucero*, 102 F.3d 445, 447 (10th Cir. 1996).

[79] *Laufer*, 22 F.4th at 876 (*citing Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

[80] *Id.*

[81] *TransUnion v. Ramirez*, 594 U.S. 413, 441 (2021).

The Lt. Governor cites the Tenth Circuit's decision in *Looper*.[82] In *Looper*, Ms. Deborah Laufer, a self-identified ADA "tester" from Florida, reviewed the Colorado Elk's Run Inn's online reservation system and sued alleging ADA violations.[83] Ms. Laufer stated she intended "in the near future" to "to test [the website] for compliance with 28 C.F.R. Section 36.302(e) and/or to utilize the system to reserve a guest room and otherwise avail herself of the goods, services, features, facilities, benefits advantages, and accommodations of the Property."[84] The district court dismissed for lack of Article III standing, and the Tenth Circuit affirmed. The Tenth Circuit, relying on *Spokeo* and *TransUnion*, held that Ms. Laufer lacked Article III standing because, "the Supreme Court explained that a statutory violation does not necessarily establish injury in fact." Ms. Laufer argued that she sustained an informational injury and therefore had standing under *Akins* and *Public Citizen*.[85] The Tenth Circuit rejected this argument, stating:

> The Supreme Court's recent decision in *TransUnion* shows why this argument fails. In that case the United States, participating as amicus, argued that the plaintiffs had suffered an "informational injury" under *Public Citizen* and *Akins* when TransUnion allegedly failed to provide them with required disclosures in a specified format under the FCRA. The Court rejected this argument in part because "the plaintiffs have identified no 'downstream consequences' from failing to receive the required information." "An asserted informational injury that causes no adverse effects cannot satisfy Article III."[86]

Here, the Lt. Governor argues that *Looper* is applicable because it shows "[t]he Tenth Circuit has rejected [Mr. Lyman's] reading of *Public Citizen* and *Akins*."[87] Mr. Lyman disagrees,

---

[82] *See* Reply at 3 (*quoting Looper*, 22 F.4th at 881 n.6 (10th Cir. 2022)).

[83] *Looper* at 874-75.

[84] *Id*. at 875.

[85] *Id*. at 880.

[86] *Id*. at 880-881.

[87] Reply at 5.

12

arguing that *Looper* is distinguishable because "[t]he [Tenth Circuit] was well aware of the *TransUnion* decision and interpreted it as being in accord with *Public Citizen* and *Akins*."[88]

Furthermore, his Opposition asserts "Mr. Lyman alleges exactly such an adverse effect" therefore distinguishing *Looper*.[89] The "downstream consequences" Mr. Lyman alleges to have incurred are: (1) the impaired ability to "study and analyze Utah's voter list maintenance programs and activities."; (2) the impaired ability to "assess Utah's enforcement of state and federal voter eligibility requirements."; and (3) the impaired ability to "assess Utah's compliance with voter list maintenance obligations."[90]

The Fourth Circuit in *Laufer v. Naranda Hotels, LLC*[91] held that Ms. Deborah Laufer (the same plaintiff who appeared in *Looper*) possessed Article III standing to sue a hotel owner for violations of the ADA's Hotel Reservation Regulation based solely on an alleged informational injury.[92] Ms. Laufer, acting again as a "tester," visited Naranda's website and discovered they failed to provide accessibility information required by law. [93] Ms. Laufer had no intention of booking a room at the hotel.[94] The Fourth Circuit analogized Ms. Laufer's injury to that of a Fair Housing Act tester in *Havens Realty Corp. v. Coleman*,[95] who possessed standing despite having no intention to rent an apartment because she had been denied "truthful information" to which she was statutorily entitled.[96] The Fourth Circuit reasoned that *Havens Realty* "squarely rejected

---

[88] Opposition at 11-12.

[89] *Id*. at 11-12.

[90] *Id*. at 8.

[91] *Laufer v. Naranda Hotels, LLC*, 60 F.4th 156 (4th Cir. 2023).

[92] *Id.* at 166.

[93] *Id.* at 159–60.

[94] *Id*.

[95] *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 374 (1982).

[96] *Naranda Hotels*, 60 F.4th at 166–67.

13

any . . . use requirement," holding that a tester's lack of intention to use services "does not negate the simple fact of injury."[97] The Fourth Circuit further emphasized that while plaintiffs in *Public Citizen* and *Akins* had articulated uses for withheld information, "those asserted uses were not a factor in the *Public Citizen* and *Akins* Article III standing analyses."[98]Accordingly, the Fourth Circuit vacated the district court's dismissal and remanded for further proceedings.[99]

The Fourth Circuit expressly disagreed with the *Looper's* reliance on *TransUnion* to impose a "downstream consequences" requirement.[100] In *Looper*, the Tenth Circuit interpreted *Public Citizen* and *Akins* to require plaintiffs to demonstrate "some relevance" by showing an intended use for withheld information beyond litigation.[101] The Fourth Circuit stated that *TransUnion* had distinguished rather than reinterpreted those precedents, differentiating information "received in the wrong format" from a complete "fail[ure] to receive any required information."[102] The Fourth Circuit observed that *Havens Realty* had "squarely rejected any . . . use requirement" of downstream consequences. The Fourth Circuit believed that while the *Public Citizen* and *Akins* plaintiffs had articulated uses for requested information, "those asserted uses were not a factor in the *Public Citizen* and *Akins* Article III standing analyses."[103]

Despite the disagreement between the Tenth Circuit in *Looper* and the Fourth Circuit in *Naranda*, involving the same plaintiff, the same statutes, and nearly identical facts, *Looper* is binding on district courts in the Tenth Circuit. This case does not invoke the Fair Housing Act,

---

[97] *Id.* at 172.

[98] *Id.*

[99] *Id.* at 175.

[100] *Id* at 172 n.7.

[101] *Looper*, 22 F.4th at 881.

[102] *Naranda Hotels*, 60 F.4th at 170.

[103] *Id.* at 172.

the ADA, racial animus, nor any form of discrimination. Mr. Lyman alleges a purely informational injury under the NVRA. Mr. Lyman chose to file this case in the Tenth Circuit where *Looper* controls. *Looper* requires plaintiffs alleging informational injuries to demonstrate that the withheld information has "some relevance" to them beyond the litigation itself.[104]

Mr. Lyman attempts to allege downstream consequences, but it makes no real difference. The consequences Mr. Lyman cites simply repackage his core claim: a desire to monitor and sue the Lt. Governor for alleged NVRA violations.[105] Therefore, like in *Looper*, Mr. Lyman merely seeks to see if the Lt. Governor's office follows the NVRA, which is no different than Ms. Laufer trying to see if the Elk's Run Inn followed the ADA.[106] The Tenth Circuit squarely rejected analogies to FOIA, instead holding that plaintiffs alleging informational injuries must demonstrate "some relevance" of the withheld information beyond the lawsuit itself and identify "downstream consequences" from the regulatory violation. [107]

Mr. Lyman himself has stated he has suffered an "informational injury."[108] Though Mr. Lyman has served as a county commissioner, state legislator, and gubernatorial candidate, all roles that under Utah law would have given him the information he now seeks,[109] he is now a private citizen seeking to oversee the Lt. Governor's NVRA compliance. Mr. Lyman alleges a statutory violation without an injury in fact. Under *Looper*, that is insufficient for Article III standing.

---

[104] *Looper*, 22 F.4th at 881.

[105] *Id*.

[106] *Looper*, 22 F.4th at 879.

[107] *Id*. at 877.

[108] Opposition at 1.

[109] Utah Code § 20A-2-104(4).

15

Mr. Lyman has not suffered a concrete injury sufficient to establish injury in fact, and he therefore lacks Article III standing.

### 3.1.3  The Supplemental Authority Informs Without Binding This Case.

The parties' successive supplemental briefs document how NVRA jurisprudence continues to develop nationally. Two cases are at the center of the supplemental briefs: (1) *Voter Reference Foundation, LLC v. Torrez*; and (2) *Public Interest Legal Found v. Adrian Fontes*. [110] Both cases have been reviewed and are discussed below. While each case examines the same out-of-circuit precedent at issue here, each is factually distinguishable.

3.1.3.1  *Torrez* Does Not Support Mr. Lyman's Claim Because He Faces No Threat of State Enforcement and his Injury Is Solely Informational.

After the parties issued their respective briefs, the Tenth Circuit ruled on NVRA standing in *Voter Reference Foundation, LLC v. Torrez*.[111] The parties were ordered to provide supplemental briefing on *Torrez*.[112]

In *Torrez*, Voter Reference Foundation ("VRF") published New Mexico's voter data, received from the New Mexico Secretary of State's Office.[113] New Mexico's Secretary of State accused VRF of violating New Mexico's "Use Restrictions" and the "Data Sharing Ban," and referred VRF for criminal investigation and prosecution.[114] New Mexico's Attorney General then forwarded the referral to the FBI, and internal notes from the Secretary's Office recorded an instruction not to fulfill VRF's subsequent voter-data requests.[115] Facing a credible threat of

---

[110] *See* Lt. Governor's Supplement; *see also* Lyman's Supplement; *see also* Fontes Supplement; and Lyman's First Notice of Supplemental Authority, docket no. 35, filed December 4, 2025.

[111] *Torrez*, 160 F.4th at 1.

[112] Docket Text Order, docket no. 36, filed December 5, 2025.

[113] *Id*.

[114] *Id*. at 2.

[115] *Id*. at 3.

16

prosecution, VRF removed the New Mexico voter data from its website and refrained from further publication despite a stated desire to continue doing so.[116]

VRF issued formal notice under the NVRA identifying the refusal to disclose voter data as a statutory violation, but the Secretary did not cure the violation within the NVRA's required timeline.[117] VRF sued asserting five First and Fifth Amendment claims and sought a preliminary injunction to prevent New Mexico from prosecuting it under the Election Code or restricting its use and publication of voter data.[118] The district court granted VRF's motion for preliminary injunction, which was stayed by the Tenth Circuit.[119] After a one-day bench trial, the district court found the State's refusal to provide voter data was unconstitutional viewpoint discrimination and enjoined the State from enforcing the "Use Restrictions" and the "Data Sharing Ban," against VRF.[120] The State appealed.

Though standing was not raised by either party on appeal, the Tenth Circuit discussed it.[121] The Tenth Circuit observed that the State submitted supplemental authority, relying on *PILF v. Sec'y Commonwealth of Pa.*[122] and *Benson*[123] to contend that VRF lacked standing.[124] The Tenth Circuit distinguished those cases, stating:

> In those cases, plaintiffs had not alleged an injury in fact because they could not show that the unlawful denial of record requests caused a concrete downstream injury . . . But VRF's claim does not rest on an informational injury; it rests on the statute's chilling effect. VRF faces possible criminal investigation and

---

[116] *Id.*

[117] *Id.*

[118] *Id.*

[119] *Id.* at 4.

[120] *Id.* at 5.

[121] *Id.* at 1078.

[122] *Id.* (*citing Sec'y Commonwealth of Pa.*, 136 F.4th at 465–69).

[123] *Id.* (*citing Benson*, 136 F.4th at 629).

[124] *Id.* at 5.

17

prosecution based on the Secretary's criminal referral letter to the Attorney General and FBI, indicating that VRF's conduct is proscribed by New Mexico's Election Code. [125]

Due to the threat of criminal prosecution, the Tenth Circuit found that VRF had standing.[126]

Here, both parties agree that *Torrez* "does not address standing in this case."[127] The Lt. Governor affirms "*Torrez* is of no help to Plaintiff here."[128] Mr. Lyman states that the injury in *Torrez* is "wholly dissimilar from Mr. Lyman's injury and so has no bearing on the pending motion to dismiss."[129] After distinguishing the facts of *Torrez*, Mr. Lyman distinguishes the holding of *Torrez*:

> *Torrez* did not address whether the denial of a public records request constitutes a concrete injury under Article III. That question was not presented by the facts before the court, and the Tenth Circuit appropriately did not decide it. *Torrez* involved a wholly different and unrelated injury than the one alleged here.[130]

Finally, both parties spotted the Tenth Circuit's carve out in *Torrez* for informational injuries[131] when the Tenth Circuit stated, "VRF's claim does not rest on an informational injury; it rests on the statute's chilling effect." [132] Mr. Lyman himself has admitted the facts of his case are distinguished from *Torrez*.[133] Therefore, the calculus is straightforward. Both parties agree *Torrez* is distinguished because Mr. Lyman has alleged only an informational injury, and the Tenth Circuit itself carved out informational injuries from *Torrez*'s reach. *Torrez* does not apply.

---

[125] *Torrez*, 160 F.4th at 1078.

[126] *Id*. at 6.

[127] Lyman's Supplement at 2.

[128] Lt. Governor's Supplement at 5.

[129] Lyman's Supplement at 1.

[130] *Id*. at 4.

[131] *Compare* Lt. Governor's Supplement at 1 *and* Lyman's Supplement at 2 *referencing Torrez*, 160 F.4th at 1068.

[132] *Torrez*, 160 F.4th at 1078.

[133] Lyman's Supplement at 2-3.

The parties do not dispute[134] that the Tenth Circuit's holding in *Torrez* is consistent with *Looper.* The viewpoint discrimination presented in *Torrez* meets the "concrete interest" or "injury in fact" that the Tenth Circuit stated in *Looper* is necessary to establish standing post-*TransUnion*.[135] Therefore, *Torrez* represents a narrower holding in the NVRA context that builds on *Looper*: a credible claim of viewpoint discrimination establishes a concrete injury in fact, and when paired with the NVRA's private right of action, a party has standing to sue. Absent impairment of a concrete interest, however, an informational injury alone is insufficient to confer standing under the NVRA.

Both *Looper* and *Torrez* show that not all statutory rights create a concrete harm, and that standing under the NVRA requires more than a mere informational injury.

### 3.1.3.2    *Fontes* Informs Without Governing This Case.

After briefing closed, after the Tenth Circuit's *Torrez* decision, but before this order was issued, another NVRA ruling emerged from the District of Arizona in *PILF v. Fontes*.[136] In *Fontes*, PILF who serves as counsel for Mr. Lyman in this case, requested all Electronic Registration Information Center ("ERIC") Retraction Reports and related correspondence from Arizona Secretary of State Adrian Fontes under the NVRA.[137] Secretary Fontes moved to dismiss for failure to state a claim, arguing PILF lacked standing under *TransUnion*.[138] PILF countered, as it does here, that *Public Citizen* and *Akins* confer standing.[139]

---

[134] *Compare* Lt. Governor's Supplement at 1; *and* Lyman's Supplement at 2.

[135] *Compare Looper*, 22 F.4th at 879 *with Torrez*, 160 F.4th at 1068.

[136] *Public Interest Legal Foundation v. Fontes*, No. CV-25-02722-PHX-MTL, 2026 WL 45037 (D. Ariz. Jan. 5, 2026).

[137] *Id*. at *1.

[138] *Id*. at *2.

[139] *Id*. at *3.

The district court denied the motion to dismiss. First, Judge Liburdi rejected PILF's reliance on *Public Citizen* and *Akins,* applied *TransUnion* instead, and held "[b]ecause [PILF] alleges an informational injury, it must also show a nexus between the downstream consequence, the alleged harm, and the concrete interest Congress sought to protect."[140] Second, Judge Liburdi found PILF's alleged downstream consequences sufficient for standing. In coming to that determination Judge Liburdi distinguished all out-of-circuit precedent[141] and applied binding Ninth Circuit precedent, most notably *Mi Familia Vota v. Fontes*.[142] In *Mi Familia Vota*, the Ninth Circuit held that plaintiffs had standing to request the same records PILF sought, against the same Arizona Secretary of State, under the same NVRA provisions.[143] Bound by that precedent, Judge Liburdi ruled PILF's downstream consequences established standing.[144]

*Fontes* informs without governing. Judge Liburdi applied *TransUnion*, distinguished out-of-circuit precedent, and followed binding circuit authority. This order does the same but reaches a different result. Geography determines the outcome. While Judge Liburdi could distinguish *Looper* and was bound by *Mi Familia Vota*, the opposite holds true here. In the Tenth Circuit, *Looper* binds and *Mi Familia Vota* persuades at most. As discussed above, *Looper* mandates dismissal.

---

[140] *Id*.

[141] *Id*. (*distinguishing Scott*, 49 F.4th at 938; *Looper*, 22 F.4th at 881; *Benson*, 136 F.4th at 630 n.11; *Sec'y of Pa.*, 136 F.4th at 466).

[142] *Id*. (*citing Mi Familia Vota v. Fontes*, 129 F.4th 691, 717 (9th Cir. 2025)).

[143] *Mi Familia Vota*, 129 F.4th at 710-715.

[144] *Fontes*, No. CV-25-02722-PHX-MTL, 2026 WL 45037 at *4-5.

20

### 3.1.4  Circuit Courts Agree That After *TransUnion* an Informational Injury Without Downstream Consequences Does Not Establish Standing.

It appears at first glance that the parties have taken opposite sides of a circuit split arising post-*TransUnion*. The Lt. Governor favors the Fifth, Third, and Sixth Circuits as the "three federal courts of appeals [that] have rejected '[information injury as sufficient for Article III standing] in NVRA cases."[145] Mr. Lyman praises the First Circuit's position in *Public Interest Legal Fund v. Bellows*[146] and asserts that "Courts across the country have recognized that statewide registration lists fall squarely within this statutory mandate."[147] A closer look reveals no split at all, and instead the circuits apply a single rule: if there is no threat of state enforcement, there is no injury in fact.

After *TransUnion* was decided in 2021, the Fifth Circuit was the first to address standing under the NVRA in 2022 in *Campaign Legal Center v. Scott*.[148] In *Scott*, Campaign Legal Center identified more than 11,000 registered voters in Texas as potential non-citizens based on Texas Department of Public Safety records.[149] Campaign Legal Center wrote to the Texas Secretary of State for voter-specific information to evaluate the accuracy of the Texas's electoral process.[150] The Texas Secretary of State refused to disclose the requested records. Campaign Legal Center sued under the NVRA alleging that Texas had unlawfully withheld information the NVRA requires to be made available for public inspection. The district court, after determining that there was standing to bring the case, issued an injunction requiring the State of Texas to provide

---

[145] Reply at 3 (*citing Sec'y Commonwealth of Pa.*, 136 F.4th at 456; *Scott*, 49 F.4th at 931; *Benson*, 136 F.4th at 613).

[146] *Bellows*, 92 F.4th at 54.

[147] Opposition at 13 (*citing Bellows*, 92 F.4th at 47).

[148] 49 F.4th at 931.

[149] *Id*. at 934.

[150] *Id*.

information requested.[151] On appeal the Fifth Circuit reversed, holding that after *TransUnion,* the

Campaign Legal Center did not have standing.[152] The Fifth Circuit analyzed Supreme Court

precedent:

> Even if Plaintiffs had a right to the records sought, an issue we do not reach, they
> have not established an injury in fact. *Spokeo* implied and *TransUnion* held that
> "under Article III, an injury in law is not an injury in fact." *TransUnion* generally
> rejected the Attorney General's advocacy for an unlimited "informational injury"
> approach to standing, in part by explaining that "the plaintiffs have identified no
> 'downstream consequences' from failing to receive the required information.'" As
> this court recently observed, *TransUnion* rejected "the proposition that 'a plaintiff
> automatically satisfies the injury-in-fact requirement whenever a statute grants a
> person a statutory right and purports to authorize that person to sue to vindicate
> that right.'"[153]

The Fifth Circuit applied this analysis to Campaign Legal Center's claims for standing.[154]

Campaign Legal Center argued a statutory right to the "visibility" of the Texas's process, to

which they were denied. The Fifth Circuit stated this was not enough, because "absent concrete

and particularized harm to [Campaign Legal Center] from not obtaining the requested personal

voter information, they assert no cognizable injury in fact."[155] The Fifth Circuit reversed and

remanded with instructions to dismiss the case.[156]

Following *Scott*, the Third and Sixth Circuits adopted the same basic rule: "failure to

articulate specific downstream consequences demonstrates [a failure] to show a sufficient injury

to confer Article III standing."[157] In *Sec'y Commonwealth of Pa.*, PILF, which represents Mr.

Lyman here, sent multiple letters to Pennsylvania's Secretary of the Commonwealth after the

---

[151] *Id*. at 932.

[152] *Id*. at 939.

[153] *Id*. at 937.

[154] *Id*.

[155] *Id*.

[156] *Id*. at 939.

[157] *Benson*, 136 F.4th at 632.

22

Secretary disclosed that a "glitch" in a state computer system had allowed ineligible persons to register to vote while applying for or renewing driver's licenses or vehicle registrations.[158] Though the Secretary gave PILF some records, all the records requested were not provided and PILF filed suit.[159] On appeal, PILF argued, as they do here, that *Public Citizen* and *Akins* govern standing under the NVRA.[160] The Sixth Circuit disagreed, stating as follows:

> One can dispute whether *TransUnion* raised the bar in terms of the adverse consequences that must be alleged to satisfy the standing requirements in different statutory settings . . . [b]ut it set the standard we must follow. And under the Supreme Court's standard, statutory context is important. Here, as in *TransUnion*, we are presented with a statute with a purpose that goes farther than government transparency such as FOIA. The required disclosure of certain records is merely one aspect of the statutory scheme in service of a greater purpose—that is, as we explain below, *the expansion of voter participation in federal elections.*[161]

The Sixth Circuit applied *TransUnion*, vacated the District Court's orders, and remanded with instructions to the District Court to dismiss the case.[162]

In *Benson* (in the Sixth Circuit), PILF sent multiple letters to the Michigan Secretary of State regarding deceased registrants on the active voter rolls.[163] After not getting the results they wanted, PILF filed suit under the NVRA to obtain voter rolls in Michigan.[164] On appeal, the Sixth Circuit specifically noted that PILF had raised identical arguments before the Third Circuit, and called the arguments "unavailing."[165] The Sixth Circuit noted that the Third Circuit found

---

[158] *Sec'y Commonwealth of Pa.*, 136 F.4th at 459.

[159] *Id*. at 460.

[160] *Id*. at 462.

[161] *Id*. at 463.

[162] *Id*. at 470.

[163] *Benson*, 136 F.4th at 632.

[164] *Id*. at 632 (*citing Sec'y Commonwealth of Pa.*, 136 F.4th at 468).

[165] *Id*. at 631.

23

PILF "failed to identify some *specific* adverse downstream consequence for its mission or future plans." The Sixth Circuit followed the Third and the Fifth and rejected PILF's arguments.[166]

Though PILF failed in the Third and Sixth Circuits, they prevailed before the First Circuit in *Bellows*.[167] PILF requested Maine's voter roll under the NVRA, and acknowledged that a state statutory exception barred PILF's intended uses.[168] Maine's Deputy Secretary of State denied the request, stating she lacked authority to release the file, and PILF sued.[169] While the case was pending, the Maine Legislature adopted a new statutory exception, which allowed access for voter-list-maintenance review but imposes civil penalties of up to $1,000 for misuse.[170]

On appeal, Maine argued that PILF lacked standing because the State would not treat PILF's conduct as a violation.[171] The First Circuit rejected that position, holding that Maine's position was not "nonenforcement" but that "these statements [of the Secretary of State to refrain from prosecution] do not have the force of law and are not binding on future officeholders."[172] In other words, because PILF still faced a possibility of enforcement under the new state exception from a different administration, the First Circuit held that PILF had standing.[173]

The out-circuit-cases use legal reasoning consistent with Tenth Circuit precedent. The holdings from the Fifth, Third, and Sixth Circuits found no standing for cases that only presented an informational injury. This is exactly what the Tenth Circuit stated in *Looper*: "an injury in law

---

[166] *Id*. at 632 (*citing Sec'y Commonwealth of Pa.*, 136 F.4th at 469).

[167] *Bellows*, 92 F.4th 36.

[168] *Id*.at 43.

[169] *Id*.

[170] *Id*.

[171] *Id*. at 50.

[172] *Id*.

[173] *Id*. at 50-51.

is not an injury in fact."[174] The First Circuit, and now the Tenth Circuit in *Torrez*, found a party

had standing when there was the threat of either civil or criminal enforcement. The circuits are

not in conflict.

Mr. Lyman concedes that his only injury is informational,[175] and nothing in the record

shows any threat that Utah may enforce its laws against Mr. Lyman through civil penalties or

criminal prosecution. Mr. Lyman has not alleged any threat of civil enforcement by the Lt.

Governor, and none appears in the Lt. Governor's filings. Without a real enforcement risk,

*Torrez* and *Bellows* do not support a finding of standing. The simple rule is this: if there is no

threat of state enforcement, there is no injury in fact. The persuasive holdings in *Benson*, *Scott*,

and *Secretary of Pennsylvania*, along with the binding rule in *Looper*, make clear that

informational injuries alone cannot establish standing under the NVRA after *TransUnion*.

Granting the Lt. Governor's Motion to Dismiss is therefore appropriate.

## 4   CONCLUSION

Mr. Lyman has satisfied the NVRA's statutory prerequisites for suit, but statutory

violation does not provide Article III standing. Article III requires more than a statutory right and

an informational injury; it demands a concrete harm. The Supreme Court made this clear in

*TransUnion*, and the Tenth Circuit has applied that rule in both *Looper* and *Torrez*. Mr. Lyman

only wants information to monitor the Lt. Governor's compliance with the NVRA. He faces no

threat of prosecution; no civil penalty; no viewpoint discrimination; and no adverse consequence

beyond being denied access to data he seeks. That is no more than an informational injury, Mr.

Lyman falls short of Article III's threshold requirement. Without a concrete harm; enforcement

---

[174] *Looper*, 22 F.4th at 877 (*quoting TransUnion*, 594 U.S. at 425).

[175] Opposition at 2.

risk; chilling effect; or tangible downstream harm, there is no case or controversy. Mr. Lyman's

claimed injury is admittedly entirely informational, and under controlling authority, that is

insufficient. The Lt. Governor's Motion to Dismiss is therefore GRANTED.

## 5   ORDER

IT IS HEREBY ORDERED that the Lt. Governor's Motion to Dismiss[176] is GRANTED.

IT IS FURTHER ORDERED that:

1.      Mr. Lyman's Motion for Summary Judgment[177] is FOUND MOOT.

2.      Lt. Governor's Motion for Relief funder Federal Rule of Civil Procedure 56(d)[178]

    is FOUND MOOT.

3.      The Clerk of Court is ordered to CLOSE THE CASE.

Signed January 14, 2026.


BY THE COURT


_____
David Nuffer
United States District Judge

---

[176] Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1), docket no. 18, filed August 4, 2025.

[177] Lyman's Motion for Summary Judgment, docket no. 17, filed July 29, 2025.

[178] Motion for Relief under Federal Rule of Civil Procedure 56(d), docket no. 33, filed November 24, 2025.

26

# ATTACHMENT 2

THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| PHIL LYMAN,<br><br>     Plaintiff,<br><br>v.<br><br>DEIDRE HENDERSON, in her official capacity as Lt. Governor of the State of Utah,<br><br>     Defendant. | **JUDGMENT IN A CIVIL CASE**<br><br>Case No. 4:25-cv-00069-DN-PK<br><br>District Judge David Nuffer |

IT IS ORDERED AND ADJUDGED as explained in the Memorandum Decision and Order Granting Defendant Lieutenant Governor Deidre Henderson's [18] Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1), that Lt. Governor Deidre Henderson's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) [1] is GRANTED.

IT IS FURTHER ORDERED that:

1.  Mr. Lyman's Motion for Summary Judgment[2] is FOUND MOOT.

2.  Lt. Governor's Motion for Relief funder Federal Rule of Civil Procedure 56(d)[3] is FOUND MOOT.

---

[1] Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1), docket no. 18, filed August 4, 2025.

[2] Lyman's Motion for Summary Judgment, docket no. 17, filed July 29, 2025.

[3] Motion for Relief under Federal Rule of Civil Procedure 56(d), docket no. 33, filed November 24, 2025.

3.    The Clerk of Court is directed to CLOSE THE CASE.

Signed January 14, 2026.

BY THE COURT

_____
David Nuffer
United States District Judge

2