No. 26-4014

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

_____

### PHIL LYMAN,

*Plaintiff-Appellant*

v.

### DEIDRE HENDERSON, in her official capacity as
### Lt. Governor of the State of Utah,

*Defendant-Appellee*

_____

### APPELLANT'S REPLY BRIEF

_____

Appeal from the United States District Court for the District of Utah
Honorable David Nuffer, District Judge
Case No. 4:25-CV-00069-DN-PK

_____


Kaylan Phillips
PUBLIC INTEREST LEGAL FOUNDATION
107 S. West Street, Ste. 700
Alexandria, VA 22314
(703) 745-5870
kphillips@publicinterestlegal.org

***ORAL ARGUMENT REQUESTED***

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...............................................................................i

ARGUMENT ...............................................................................................1

    **I.**    The Ninth Circuit Just Resolved the Standing Standard and Mr. Lyman Meets It ...............................................................................................1

    **II.**    Mr. Lyman's Status as a Candidate Is Indisputable ...................................4

        **a.**  The Lower Court Acknowledged Mr. Lyman's Status as a Candidate ...............................................................................................4

        **b.**  *Bost* controls. ...................................................................................6

    **III.**    Utah's New Privacy Law Confirms the Controversy before this Court ....6

CONCLUSION ...............................................................................................8

CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a).......................9

CERTIFICATE OF DIGITAL SUBMISSION .......................................................10

CERTIFICATE OF SERVICE ...........................................................................11

## TABLE OF AUTHORITIES

Cases                                                                          Page(s)

*Bost v. Ill. State Bd. of Elections*,
    607 U.S. 71 (2026)....................................................................................................6

*California v. Texas*,
    593 U.S. 659 (2021)..................................................................................................5

*FEC v. Akins*,
    524 U.S. 11(1988)....................................................................................................2

*Fuqua v. Santa Fe Cnty. Sherriff's Off.*,
    157 F.4th 1288 (2025) .............................................................................................4

*Pub. Citizen v. U.S. Dep't of Justice*,
    491 U.S. 440 (1989)..................................................................................................2

*Pub. Int. Leg. Found., Inc. v. Nago*,
    174 F.4th 664 (2026) ........................................................................................... 1-3

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021)..................................................................................................3

*United States v. Leffler*,
    942 F.3d 1192 (2019) ..............................................................................................5

Other Authorities

FED. R. EVID. 201 .....................................................................................................4

The Lt. Governor's response confirms the issue before the Court: is the NVRA's public disclosure provision a need-to-know or a right-to-know law? The Ninth Circuit just determined it is the latter. This Court should do the same.

Lt. Governor devotes *thirteen pages* to arguing that her former political opponent's injuries were not good enough. Response at 48-60. This cannot be the standard in the Tenth Circuit. If the Government gets to decide if your reasons for wanting public records are good enough, your reasons will never be good enough.

Utah has been in violation of federal law and its leaders know it. Instead of owning and correcting the violation, the Lt. Governor doubles down on her position that violations of federal law cannot be redressed by Mr. Lyman, a former candidate and lifelong Utah citizen invested in the integrity of the State.

Contrary to the Lt. Governor's assertions, this case is not about protecting the most vulnerable. Mr. Lyman disavows seeking the records of domestic violence victims. This case is about ensuring access to records that the United States Congress made public, records that the Lt. Governor continues to conceal.

## **ARGUMENT**

### I.    **The Ninth Circuit Just Resolved the Standing Standard and Mr. Lyman Meets It.**

After Mr. Lyman filed his Opening Brief, the Ninth Circuit squarely addressed the question of standing under the NVRA. Specifically, the court held that the Public Interest Legal Foundation "has standing because the bare denial of a

1

request for information under the NVRA causes an injury in fact sufficient to support Article III standing." *Pub. Int. Leg. Found., Inc. v. Nago*, 174 F.4th 664, 670 (2026).

The Ninth Circuit relied upon decisions from the United States Supreme Court that have "long recognized that if a statute creates a broad public right to obtain information about the government, the denial of a request for information made pursuant to that statute causes an injury in fact." *Id*. These cases, *Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440 (1989), and *FEC v. Akins*, 524 U.S. 11 (1998), are discussed in the Opening Brief at 20-25.

Addressing the same arguments put forth by the Lt. Governor in this case, the Ninth Circuit stressed that "[n]either *Akins* nor *Public Citizen* required a showing of adverse effects." *Nago*, 174 F.4th at 673. As to the language from *Public Citizen* about the plaintiffs' intended uses for the information that the Lt. Governor relies upon here, Response at 35-36, the Ninth Circuit explained that the Supreme Court "emphasized that its 'decisions interpreting the Freedom of Information Act have never suggested that those requesting information under it need show more than that they sought and were denied specific agency records. There is no reason for a different rule here.'" *Nago*, 174 F.4th at 673-74 (quoting *Public Citizen*, 491 U.S. at 449). So too, here.

2

The Ninth Circuit also rejected the argument that the Supreme Court's 2021 decision changed the relevant standing analysis. The Ninth Circuit determined that *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), does not control where the litigant claims to have been *denied* information. *Nago*, 174 at 672; *see also* Opening Brief at 25-26. Further, *TransUnion* does not control because it "did not involve a sunshine law." *Id*.; *see also* Opening Brief at 25-26. In so doing, the Ninth Circuit rejected the reasoning of the Fifth Circuit that the Lt. Governor relies upon in her Response. *Id*. at 673; *see* Response at 30, 40-41.

As the Lt. Governor concedes, "this Court has not determined whether the downstream consequences requirement applies to informational injuries under the NVRA." Response at 13. The Ninth Circuit's reasoning applies equally in the Tenth Circuit. "The public disclosure provision serves a transparency function, ensuring that the public may verify that list-maintenance activities are implemented lawfully…." *Nago*, 174 F.4th at 668.

Even if downstream consequences must be pleaded, Mr. Lyman did so. The Complaint speaks for itself. *See* Opening Brief at 10-13. The Lt. Governor's quibbling over the sufficiency of his consequences further demonstrates the unworkability of her standard. Lengthy debate about the activities of private citizens is not what Congress envisioned when it made government list maintenance records public.

3

## II.    Mr. Lyman's Status as a Candidate Is Indisputable.

That Mr. Lyman has served in public office and run for public office is not a fact that is reasonably in dispute. The lower court was aware of it. App.101. The Lt. Governor was Mr. Lyman's one-time political opponent in the Republican primary for Governor and Lt. Governor in 2024. *See* THE STATE OF UTAH, Electionresults.utah.gov/results/public/Utah/elections/primary06252024 (last accessed July 25, 2026). It is an indisputable fact in this jurisdiction. This Court explained that the Federal Rules of Evidence allows for courts to notice facts which "are 'generally known within the trial court's territorial jurisdiction,'…or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Fuqua v. Santa Fe Cnty. Sherriff's Off.*, 157 F.4th 1288, 1298 (10th Cir. 2025) (quoting Fed. R. Evid. 201(b)). Mr. Lyman's status as a candidate is one such fact.

This is not about "new candidacy theories," Response at 19; this is an undisputed fact coupled with new binding precedent from the Supreme Court.

### a.  The Lower Court Acknowledged Mr. Lyman's Status as a Candidate.

The lower court acknowledged Mr. Lyman's past elected roles and candidacies in dismissing Mr. Lyman's complaint. App.101.[1] Yet the Lt. Governor

---

[1] As set forth in the Opening Brief, the lower court erred in determining that Mr. Lyman could have received the requested information as a state representative or

4

disputes Mr. Lyman's ability to rely upon those same roles and candidacies now because he did not include them in his complaint.

The Lt. Governor cites two distinguishable cases. In *United States v. Leffler*, the appellant had a full, criminal trial and shifted his theory, without new facts or case law, on appeal. *United States v. Leffler*, 942 F.3d 1192, 1195-96 (10th Cir. 2019). The other, *California v. Texas*, involved the U.S. Supreme Court declining to examine a "novel alternative theory" of standing raised first in the merits briefing and not mentioned in the lower courts or at the certiorari stage. *California v. Texas*, 593 U.S. 659, 674 (2021).

In contrast, Mr. Lyman's past and potential candidacies are judicially noticeable facts, acknowledged by the lower court, and confirmed by records maintained by the Lt. Governor. His candidacy is not a novel alternative theory but, rather, reinforces the Complaint's detailing of Mr. Lyman's interest in the denied information and the consequences of him not receiving the requested information.[2] The recent decision of the Supreme Court in *Bost* illuminates why candidates like Mr. Lyman have a special stake in the integrity of elections.

---

gubernatorial candidate. Opening Brief at 6. The Lt. Governor agrees that the lower court erred. Response Brief at 19 n.5.

[2] The Opening Brief set forth Mr. Lyman's declaration of candidacy for the United States House of Representatives. Opening Brief at 8 n.2. Mr. Lyman secured over 34 percent of the vote in his primary but did not advance to the general election ballot. THE STATE OF UTAH,

5

### b. *Bost* Controls.

While *Bost* involved a challenge to a different federal law than is implicated here, *see* Opening Brief at 7, it articulates a legal principle equally applicable here: a candidate's "interest extends to the integrity of the election—and the democratic process by which they earn or lose the support of the people they seek to represent." *Bost v. Ill. State Bd. of Elections,* 607 U.S. 71, 82 (2026). Mr. Lyman, as a past and potential future candidate, has a special interest in the integrity and transparency of Utah's elections.

The lower court erred in not crediting this unique and personal stake that Mr. Lyman has in the integrity of Utah's elections. If the Lt. Governor is correct in arguing that Mr. Lyman must demonstrate a "personally relevant downstream consequence," Response at 23, then what could be more personally relevant than his interest in the integrity of Utah's elections as a past and potential future candidate?

### III.    Utah's New Privacy Law Confirms the Controversy before this Court.

The Lt. Governor briefly mentions a new law affecting public access to the statewide list of registrants. Response at 10-11. To be sure, Mr. Lyman continues to be denied access to all the records he requested and does not concede that the

---

https://electionresults.utah.gov/results/public/Utah/elections/Primary06232026?party=Republican (last accessed July 25, 2026).

new legislation complies with federal law. But the Lt. Governor's Response omits statements from the legislature that demonstrate the impact of this case and the controversy it presents. The bill's sponsor expressly stated that the purpose of the new legislation was to correct the state's violation of federal law raised in this litigation. "Utah's voter privacy framework conflicts with federal law and exposes the state to ongoing litigation risk . . . Our current law actually conflicts with portions of [the NVRA] . . . As a result, roughly 40% of Utah's voters now have non-public registration records … While the state avoided an adverse ruling on standing grounds, the underlying legal conflict remains unsolved." Utah Senate Government Operations and Political Subdivisions Committee Meeting Jan. 23, 2026, 1:36:13-1:37:47. www.utleg.gov/event-streaming/committee/timeline/288768.

In short, Utah's leaders know they have been in violation of federal law. That violation continues. Mr. Lyman seeks to redress that violation but cannot unless and until the lower court's incorrect standing analysis is reversed.

**CONCLUSION**

Mr. Lyman requests that this Court reverse the district court's judgment and remand this action.

Dated: July 27, 2026

Respectfully submitted,

/s/ Kaylan Phillips
Kaylan Phillips
PUBLIC INTEREST LEGAL FOUNDATION
107 S. West Street, Ste 700
Alexandria, VA 22314
(703) 745-5870
kphillips@publicinterestlegal.org

Goud P. Maragani
Maragani Law Group
4523 West Park Bend Court
Riverton, UT 84096
(385) 237-7960
goud.p.maragani@proton.me

## <u>CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)</u>

This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B), because it contains 1579 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

The brief also complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5), and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point type.

Dated: July 27, 2026

<u>/s/ Kaylan Phillips</u>
Kaylan Phillips

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing:

(1) all required privacy redactions have been made per Fed. R. App. P. 25(a)(5) and 10th Cir. R. 25.5;

(2) that this document is a native PDF document;

(3) that the ECF submission is an exact copy of those documents;

(4) the digital submission has been scanned for viruses with the most recent version of a commercial virus scanning program, Bitdefender Endpoint Security Tools Antimalware, last updated on July 25, 2026; and

(5) according to the program, this document is free of viruses.


/s/ Kaylan Phillips
Kaylan Phillips

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 27, 2026, pursuant to Fed. R. App. P. 25 and 10th Cir. R. 25.4, I electronically filed the foregoing using the Court's CM/ECF system, which in turn caused electronic notifications of such filing to be sent to all counsel of record.

<u>/s/ Kaylan Phillips</u>
Kaylan Phillips